UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELAHE ROSTAMNIA, *et al.*,

    *Plaintiffs*,

v.

ANTONY J. BLINKEN, *Secretary of the U.S. Department of State*, *et al.*,

    *Defendants.*

Civil Action No. 23-1638 (RDM)

## MEMORANDUM OPINION

Plaintiffs Elahe Rostamnia, Hossein Tashakori, Jamshid Kavianpour Sangeno, and Kamyab Shoja, four unrelated citizens of Iran, bring this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361, to compel Defendants, various officials and agencies of the federal government, to adjudicate their nonimmigrant student visa applications. Dkt. 1 (Compl.).[1] Now before the Court is Defendants' motion to dismiss, Dkt. 5. For the reasons that follow, the Court will grant Defendants' motion.

## I. BACKGROUND

The following factual allegations are taken from Plaintiffs' complaint, which the Court accepts as true for purposes of resolving Defendants' motion to dismiss. *See Al-Gharawy v. U.S. Dep't of Homeland Security*, 617 F. Supp. 3d 1, 6 (D.D.C. 2022); *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 67 (D.C. Cir. 2015). Plaintiffs are Iranian citizens who applied for F-1 visas

---

[1] Since the filing of this action, two Plaintiffs, Sheida Parsa and Nasrin Badrzadeh, received their visas and voluntarily dismissed their claims. *See* Dkt. 8; Dkt. 9. The Court directs the Clerk to amend the caption to indicate that they are no longer parties to this action.

to attend American graduate-degree programs. Dkt. 1 at 6 (Compl. ¶ 20); Dkt. 1-4 at 2 (Rostamnia Decl. ¶ 2); Dkt. 1-5 at 2 (Tashakori Decl. ¶ 2); Dkt. 1-6 at 2 (Sangeno Decl. ¶ 2); Dkt. 1-7 at 2 (Shoja Decl. ¶ 2). After filing their applications with the Department of State and paying the requisite fees, they each completed their respective visa interviews at the United States Embassy in Yerevan, Armenia in November and December of 2022. Dkt. 1 at 9 (Compl. ¶¶ 31–32). After those interviews, consular officials required most of the Plaintiffs to submit responses to a separate form, DS-5535, which they individually submitted through their attorneys. *Id.* (Compl. ¶ 33). Soon thereafter, Plaintiffs' applications were placed into "administrative processing," where they remain today. *Id.* at 9 (Compl. ¶¶ 34, 36).[2]

Still awaiting final decisions, on June 6, 2023, Plaintiffs sued eight officials across the Departments of State, Justice, and Homeland Security, including Secretaries Alejandro Mayorkas and Antony Blinken, as well as Attorney General Merrick Garland. *Id.* at 1 (Compl.).

---

[2] To obtain an F-1 visa, an applicant must complete an in-person interview with a consular officer. *See* 8 U.S.C. § 1202(h). Following the interview, a consular officer "must issue the visa, refuse the visa, or," in circumstances not applicable here, "discontinue granting the visa." 22 C.F.R. § 41.121(a). As another judge of this Court has explained: "The officer need only make an initial, rather than a final, determination about an applicant's visa eligibility. In other words, under § 221(g) of the Immigration and Nationality Act (INA), an officer can temporarily refuse to issue a visa in order to allow for further administrative processing of an applicant's case if the officer needs more information or time to determine eligibility." *Rahman v. Blinken*, 2023 WL 196428, at *1 (D.D.C. Jan. 17, 2023) (citations omitted). The Department of State publishes visa-application statuses online. Beginning in March 2020, the Department changed its website to display the status of applications undergoing further administrative processing as "refused." U.S. Dep't of State, Visas: CEAC Case Status Change (Mar. 5, 2020), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-news-archive/visas-ceac-case-status-change.html (Status Change Memo). That reporting change, however, reflected "no change in such applicants' actual cases." *Id.*

In addition, because Plaintiffs are citizens of Iran, they may not receive visas "unless the Secretary of State determines . . . that [they] do not pose a threat to the safety or national security of the United States." 8 U.S.C. § 1735(a); *see, e.g.*, *Rashidi v. U.S. Dep't of State*, 2023 WL 6460030, *1 (D.D.C. Oct. 4, 2023).

Plaintiffs allege that the delay in receiving their student visa has caused them "ongoing and substantial injuries financially, educationally, professionally, and emotionally," *id.* at 11 (Compl. ¶ 53), and they seek a court order compelling Defendants to adjudicate their applications within twenty-one days, *id.* at 14 (Compl.).  On August 7, 2023, Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Dkt. 5 at 11.  The matter is now fully briefed and ripe for consideration.  *See* Dkt. 6; Dkt. 7.

## II. LEGAL STANDARD

When a defendant files a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the plaintiff generally "bears the burden of establishing jurisdiction by a preponderance of the evidence."  *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (quoting *Didban v. Pompeo*, 435 F. Supp. 3d 168, 172–73 (D.D.C. 2020)); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Unless confronted with a factual challenge to jurisdiction, the Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6) a complaint must "state a claim upon which relief can be granted."  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Although a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236

3

(1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," *id.* at 555.

### III. ANALYSIS

Defendants make six arguments in support of their motion. First, they argue that Plaintiffs have suffered no legally cognizable injury. Dkt. 5 at 18–24. Second, they argue that Plaintiffs' claims fail because they do not identify a discrete agency action that a consular office was required to, but did not, take. *Id.* at 24–31. Third, Defendants argue that, in general, "decisions relating to the exclusion of noncitizens abroad are not subject to judicial review." *Id.* at 31; *see id.* at 31–34. Fourth, they argue that Plaintiffs name officials who lack authority to grant the relief they seek. *Id.* at 34–36. Fifth, Defendants argue that Plaintiffs' claims are barred by the consular non-reviewability doctrine. *Id.* at 36–40. Finally, Defendants argue that any alleged delay is reasonable as a matter of law. *Id.* at 41–49.

Many of these arguments have been raised verbatim, and rejected verbatim, in other cases brought in this Court, alleging nearly identical facts. For example, the fifth argument—that the consular non-reviewability doctrine precludes judicial review in this case, *id.* at 36–40—has been unanimously rejected in numerous decisions. Here, too, it easily can be dispensed with at the threshold. The Court, again, notes that "the consular non-reviewability doctrine does not bar review of undue-delay claims related to visas mired in administrative processing." *Khan v. Blome*, 2022 WL 17262219, at *2 (D.D.C. Nov. 29, 2022); *see, e.g.*, *Al-Gharawy*, 617 F. Supp. 3d at 12–17; *Akrayi v. U.S. Dep't of State*, 2023 WL 2424600, at *2 (D.D.C. Mar. 9, 2023). Defendants recognize as much and register their disagreement with those decisions, Dkt. 5 at 38, but offer no persuasive reason to depart from this Court's previous holding, instead largely reiterating an argument based on *Baan Rao Thai Restaurant v. Pompeo*, 985 F.3d 1020 (D.C.

4

Cir. 2021), which this Court squarely rejected in *Al-Gharawy v. U.S. Department of Homeland Security*, 617 F. Supp. 3d 1, 16 (D.D.C. 2022).[3]

### A. Article III Standing

To meet the constitutional requirements for Article III standing, a plaintiff must demonstrate: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560–61). Defendants challenge Plaintiffs' ability to demonstrate injury and redressability, raising a host of now-familiar arguments.[4]

According to Defendants, Plaintiffs lack constitutional standing because their suit is based on a "procedural injury" that is not "tethered to some concrete interest." Dkt. 7 at 10 (quoting *Aminjavaheri v. Biden*, 2021 WL 4399690, at *6 (D.D.C. Sept. 27, 2021)). Such concrete interests include those "recognized at common law, by statute, or by the Constitution."

---

[3] Defendants' third argument, that non-citizens cannot challenge a condition of entry because the lawfulness of such a condition poses a non-justiciable political question, Dkt. 5 at 31–33, seems to be a rehash of its consular non-reviewability defense and fails for the same reasons. *See Rashidian v. Garland*, 2024 WL 1076810, at *5 (D.D.C. Mar. 8, 2024) (observing that this argument "appears largely to restate the consular nonreviewability defense"); *Ahmadi v. Scharpf*, 2024 WL 551542, at *5 n.6 (D.D.C. Feb. 12, 2024) (describing this argument as "somewhat puzzling"). As stated above, although the merits of a *final* visa determination are not reviewable, applicants can challenge delays in rendering those final decisions. Notably, Defendants themselves argue that Plaintiffs are not challenging final agency action. *See* Dkt. 5 at 49 n.7 ("[T]he basis for Plaintiffs' challenge is not of final agency action, but rather agency inaction.").

[4] The Court declines to treat Defendants' jurisdictional arguments as conceded by the Plaintiffs. *See* Dkt. 7 at 9, 15. Although it is true that Plaintiffs have not addressed those arguments, *see generally* Dkt. 6, a court *may*—but is not required—to treat unaddressed arguments as conceded. *See, e.g.*, *Xenophon Strategies, Inc. v. Jernigan Copeland & Anderson, PLLC*, 268 F. Supp. 3d 61, 72 (D.D.C. 2017).

Dkt. 5 at 19.  Defendants further submit that the "ultimate harm of an inability to travel to [the United States]" does not suffice because "Plaintiffs have neither a constitutional right to a visa nor to admission."  Dkt. 7 at 10.  Defendants misapprehend the nature of Plaintiffs' alleged injury.  On many previous occasions, this Court has held that foreign nationals have a "procedural right to reasonably expeditious agency action that is tethered to [their] concrete professional and financial interest in earning an advanced degree" in the United States.  *Rahman v. Blinken*, 2023 WL 196428, at *2 (D.D.C. Jan. 17, 2023); *see also, e.g.*, *Khan*, 2022 WL 17262219, at *3; *Pourabdollah v. Blinken*, 2024 WL 474523, at *3–4 (D.D.C. Feb. 7, 2024); *Khazaei v. Blinken*, 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023).  Here, just as in those cases, Plaintiffs have adequately alleged concrete financial and other interests in obtaining and furthering their education that gives rise to standing and the right to sue.[5]

    Plaintiffs' injuries are also redressable.  Defendants argue otherwise based on the Enhanced Border Security and Visa Entry Reform Act of 2002 which, among other things, requires the Attorney General and the Secretary of State to make a determination that nonimmigrant visa applicants from Iran "do[] not pose a threat to the safety or national security of the United States."  Dkt. 5 at 24 (quoting 8 U.S.C. § 1735(a)); *see supra* n.1; *see also, e.g.*, *Khazaei*, 2023 WL 6065095, at *1.  Defendants maintain that if the Court were to "compel consular officers to re-adjudicate Plaintiffs' applications, Section 1735 dictates that they would be refused," as no Plaintiff has pleaded that the mandated national security determination has been made as to him or her.  Dkt. 5 at 24.  On Defendants' telling, because the relief requested

---

[5] For example, one plaintiff alleges that delays in visa processing might lead her university to give her stipend and research assistant position to another student.  Dkt. 1-4 at 2 (Rostamnia Decl. ¶ 2).  Another worries that he will lose his "full tuition waiver" worth tens of thousands of dollars due to delays.  Dkt. 1-6 at 2 (Sangeno Decl. ¶ 3).

would "simply result in another refusal," it would "not redress Plaintiffs' supposed procedural harm (delay) or their ultimate harm (the inability to travel to the United States)." *Id.* "Courts in this District have routinely rejected this argument, which misunderstands . . . the relief Plaintiffs seek." *Rashidian v. Garland*, 2024 WL 1076810, at *5 (D.D.C. Mar. 8, 2024). Defendants assume that redress can "come only in the form of 're-adjudicat[ing]' applications that have already been adjudicated pursuant to Section 1735(a)," *Khazaei*, 2023 WL 6065095, at *4, but Plaintiffs allege that their applications are still pending administrative processing, *see* Dkt. 1 at 9 (Compl. ¶¶ 34–36)—and two of the original plaintiffs have, in fact, been issued visas since the complaint was filed, Dkt. 8; Dkt. 9, thus putting the lie to Defendants' argument that any "re-adjudication" would necessarily lead to rejection on the basis of § 1735. Plainly, review of Plaintiffs' applications is not complete. As such, their injuries may be redressed by a court order to complete that review in a timelier fashion. In short, Defendants' arguments fail because Plaintiffs seek the completion of administrative processing, not the re-adjudication of already-rendered decisions. *Accord, e.g.*, *Pourabdollah*, 2024 WL 474523, at *4 ("This argument was rejected in *Khazaei v. Blinken* and for good reason."); *Khazaei*, 2023 WL 6065095, at *5; *Rashidian*, 2024 WL 1076810, at *5.

Separately, Defendants argue that "several defendants that Plaintiffs name in the Complaint should be dismissed because they have no role in adjudicating the requested visa," namely officials from the State Department, Secretary of Homeland Security Alejandro Mayorkas, and Attorney General Merrick Garland. Dkt. 5 at 34. Although not characterized as such by Defendants, this argument raises redressability concerns. *See* Dkt. 5 at 34–36; Dkt. 7 at 18–21. The Court agrees that Secretary Mayorkas and Attorney General Garland should be dismissed from this suit but disagrees as to the State Department officials.

7

Beginning with the State Department officials, Defendants argue that consular officers—and not the Secretary—have "exclusive authority to review applications for visas." Dkt. 5 at 35 (quoting *Baan Rao Thai Rest.*, 985 F.3d at 1024). But, as this Court explained in *Al-Gharawy*, although the Secretary of State has no legal authority to control which visa applications consular officers grant or deny, nothing precludes him from directing the consular officers to decide pending applications "within a reasonable time," as the APA requires. 617 F. Supp. 3d at 10 (quoting 5 U.S.C. § 555(b)). Because the Secretary of State, and by extension other officials in the State Department, have the authority to direct consular officials to adjudicate Plaintiffs' applications, they are properly named in the lawsuit.

As for Secretary Mayorkas and Attorney General Garland, Defendants argue that Plaintiffs lack standing to sue both officials because they offer "no factual allegations that actions (or inactions) of [either] are fairly traceable to any purported delay." Dkt. 7 at 18; *see also* Dkt. 5 at 33–34. The Court agrees. In order to establish their standing, Plaintiffs must show, among other things, that their injuries are "causal[ly] connect[ed]" to the defendants' conduct and can "likely" be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61. Plaintiffs have not carried that burden, alleging only that the Attorney General "is charged with certain functions involved in the implementation of the INA (including the completion of federally-required background checks)," Dkt. 1 at 7 (Compl. ¶ 22), and that "Defendants have a mandatory, non-discretionary duty to complete the background checks for, and adjudications of, plaintiffs' DS-160 nonimmigrant F-1 visa applications," *id.* at 10 (Compl. ¶ 46). Plaintiffs allege no facts suggesting that the delays at issue are in any way connected to "background checks" or that there is any action that either the Secretary of Homeland Security or the Attorney General could take to expedite the review of their applications. To be sure, 18 U.S.C. § 1735(a) provides

8

that "the Secretary of State . . . , in consultation with the Attorney General and the heads of other appropriate United States agencies," shall determine whether nonimmigrant visa applicants from Iran "pose a threat to the safety or national security of the United States" before any visa may issue.  But the statute says nothing about the Secretary of Homeland Security and, absent any specific allegations from Plaintiffs, the mere existence of that statutory provision is too speculative and too attenuated a basis for this Court to assert jurisdiction over the Attorney General.  *See Lujan*, 504 U.S. at 561; *see Rashidian*, 2024 WL 1076810, at *4 (holding, on similar facts and record, that plaintiffs had failed to establish standing to sue Attorney General Garland and Secretary Mayorkas); *Rashidi*, 2023 WL 6460030, at *3 (D.D.C. Oct. 4, 2023) (dismissing claims against the Department and Secretary of Homeland Security on similar basis); *Fakhimi v. Dep't of State*, 2023 WL 6976073, at *6 (D.D.C. Oct. 23, 2023) (same).

**B.     Unreasonable Delay**

"To state a claim for unreasonable delay, Plaintiffs must first allege that the agency failed to take a discrete agency action that it is required to take, and, second, that the delay was unreasonable." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (internal citations and quotation marks omitted).  Defendants contest both points; addressing the first is unnecessary, however, because the Court agrees that any delay here is not "so egregious as to warrant mandamus." *Telecommunications Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*").  The Court, thus, assumes without deciding that Defendants are subject to a discrete, mandatory duty to adjudicate visa applications in a timely manner.[6]

---

[6] Defendants argue that, at least under the Mandamus Act, the requirement that Plaintiffs identify a "clear, non-discretionary duty" is jurisdictional. Dkt. 5 at 24–25.  To the extent the issue is jurisdictional, it is statutory, and not constitutional, in nature.  *See Rashidian*, 2024 WL 1076810, at *5 n.5; *cf. Da Costa*, 80 F.4th at 340 (accepting as uncontested assertions of a

In determining whether or not a delay is unreasonable, the standards under the APA and the Mandamus Act are "essentially the same." *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). Under either statute, the central question is "whether the agency's delay is so egregious as to warrant mandamus." *TRAC*, 750 F.2d at 79. In answering this question, courts in the D.C. Circuit weigh the following six factors, commonly referred to as the *TRAC* factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 80 (internal citations and quotation marks omitted). These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.3d at 80).

1. *Factors One and Two*

The first two *TRAC* factors, which consider "whether 'there [is] any rhyme or reason—congressionally prescribed or otherwise—for the agency's delay,'" *Rashidian*, 2024 WL 1076810, at *6 (alteration in original) (quoting *Khazaei*, 2023 WL 6065095, at *6), weigh

---

nondiscretionary duty). And courts may "address[] the merits where doing so ma[kes] it possible to avoid a doubtful issue of *statutory* jurisdiction." *Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725, 728 (D.C. Cir. 2008) (emphasis in original) (quoting *Kramer v. Gates*, 481 F.3d 788, 791 (D.C. Cir. 2007)); *see also, e.g.*, *Rashidian*, 2024 WL 1076810, at *5 n.5; *da Fonseca v. Emmel*, 2024 WL 519603, at *3 (D.D.C. Feb. 9, 2024); *Pourabdollah*, 2024 WL 474523, at *6.

against Plaintiffs. Absent a congressionally imposed timeline for processing F-1 visa applications, *Bagherian*, 442 F. Supp. 3d at 95, "'courts typically turn to case law as a guide' to determine the reasonableness of a visa-application delay," *Pourabdollah*, 2024 WL 474523, at *7 (quoting *Sarlak v. Pompeo*, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)). "District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Id.* (quoting *Rahman*, 2023 WL 196428, at *4). The delays alleged here—between five and seven months at the time the complaint was filed, now just over one year—are not unreasonable under the circumstances and by comparison to similar cases. *See, e.g.*, *Ahmadi*, 2024 WL 551542, at *5 (finding 21-month delay reasonable in adjudicating a student visa); *Dastigar v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (finding 29-month delay reasonable); *Pourabdollah*, 2024 WL 474523, at *7 (finding 14- and 20-month delays to be reasonable).

Plaintiffs submit that the time their applications have spent in administrative processing runs contrary to the "clear intention" of Congress. Dkt. 6 at 7. In support of this contention, they point to 8 U.S.C. § 1571(b),[7] which states that it "is the sense of Congress that . . . a petition for a nonimmigrant visa under section 1184(c) of this title should be processed" within thirty days. Plaintiffs' reliance on that language is inapposite, for two reasons. First, the plain language of § 1571 indicates that it applies only to the Immigration and Naturalization Service (now the U.S. Citizenship and Immigration Services ("USCIS")), and not to the State Department, the entity before which Plaintiffs' applications are currently pending. *See id.* § 1571(a)(1). Second, the provision applies only to employment-based nonimmigrant visas, *see*

---

[7] Plaintiffs cite to 8 U.S.C. § 1561, which does not exist, but it appears that they intended to refer instead to 8 U.S.C. § 1571. *See* Dkt. 7 at 25.

11

*id.* § 1184(c), and Plaintiffs seek student nonimmigrant visas, *see* Dkt. 7 at 26. When it comes to student visas, Congress has not imposed a statutory deadline, *Shen v. Pompeo*, 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021), nor has it set a deadline for the § 1735 determination required to issue nonimmigrant visas to Iranian nationals, *see Khazaei*, 2023 WL 6065095, at *6. Factors one and two favor Defendants in this case.

    2.    *Factor Four*

The fourth factor, which considers "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, also weighs in favor of Defendants. Courts have "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where 'a judicial order putting the petitioner at the head of the queue [would] simply move[] all others back one space." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (alterations in original) (quoting *In re Barr Lab'ys*, 930 F.2d 72, 75 (D.C. Cir. 1991)). If the Court were to grant the relief requested, the effect would be the promotion of Plaintiffs' applications to the detriment of other applicants. Such a remedy would amount to judicial reordering of agency priorities—an outcome that is both inappropriate and inequitable. *See Da Costa*, 80 F.4th at 343 ("In the absence of plausible allegations that USCIS is not applying its rule of reason, moving Plaintiffs' petitions to the front of the line would disrupt competing agency priorities with no overall improvement in the USCIS backlog.").

Plaintiffs do not allege any facts to mitigate this line-jumping concern. They do not, for example, allege that they have been "singled out for slower adjudication." *Id.* Such special circumstances might warrant a different outcome. Instead, Plaintiffs argue that "Defendants have offered no evidence showing why ordering the expedited, post-interview adjudications of

Plaintiffs' nonimmigrant visa applications would unreasonably impact the competing activities of the U.S. Embassy in Yerevan, Armenia or the U.S. Department of State at large." Dkt. 6 at 9. As other decisions in this district have observed:  "Admittedly, the effect of prioritizing four visa applications would be 'minimal,' but the 'accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Pourabdollah*, 2024 WL 474523, at *8 (quoting *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021)); *see also Rahman*, 2023 WL 196428, at *4.

    3.    *Factors Three and Five*

The third and fifth *TRAC* factors consider whether "human health and welfare are at stake" and the "nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. Plaintiffs allege that they will suffer various financial and intangible harms, including the potential loss of graduate school admission, stipends, and tuition waivers, as well as stress and anxiety as result.[8]  They also allege that the U.S. Embassy is holding their passports, preventing them from traveling abroad. Dkt. 1 at 9 (Compl. ¶ 35).  Taking these alleged adverse effects as true, as the Court must at this stage, factors three and five weigh, if at all, only slightly in favor of Plaintiffs.  *See Da Costa*, 80 F.4th at 344–45 (holding that financial harms coupled with the "uncertainty that results any time an individual must wait to secure a benefit" were insufficient to tip factors three and five in plaintiff's favor).  Although the delay poses limited risk to Plaintiffs' health and wellbeing, the potential losses that they face are real and substantial.

---

[8] *See, e.g.*, Dkt. 1-4 at 2 (Rostamnia Decl. ¶ 2) ("If my visa is not approved soon, the university may give my research assistant position and a stipend to another student."); Dkt. 1-5 at 2 (Tashakori Decl. ¶ 2) ("If my visa is not approved soon, I will be at the significant risk of losing my admission, as I have already deferred my enrollment three times and cannot do it again.").

13

4.      *Factor Six*

The sixth factor instructs that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80.  Because Plaintiffs do not allege bad faith on the part of Defendants, Dkt. 6 at 12, the factor is neutral here.

Considered together, the balance of the *TRAC* factors weighs decidedly in Defendants' favor.  The Court thus concludes that Plaintiffs have failed to state a claim for unreasonable delay under the APA and are also not entitled to mandamus relief.  The Court nonetheless "recognizes that the delay . . . imposes hardship on Plaintiffs, and it encourages the Government to act on the application[s] as soon as possible," *Didban*, 435 F. Supp. 3d at 177, as it has already done for two of the original plaintiffs.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, Dkt. 5, will be granted.  A separate order will issue.


                                            /s/ Randolph D. Moss
                                            RANDOLPH D. MOSS
                                            United States District Judge

Date:  March 28, 2024